TOMANY, Plaintiff, vs. CAMOZZI, Respondent: OURADA and another, Appellants.

*October 6—November 4, 1941.*

612

For the appellants there was a brief by *Gorman & Park* of Wausau, and oral argument by *E. P. Gorman.*

For the respondent there was a brief by *Genrich & Genrich,* attorneys, and *Herbert L. Terwilliger, James A. Fitzpatrick,* and *William J. Hoffmann* of counsel, all of Wausau, and oral argument by *Mr. Terwilliger.*

FOWLER, J.   An action to recover for injuries sustained in an automobile collision was brought by Rudolph Tomany against Alfred Camozzi and his insurer, the Illinois National Casualty Company, and Edward Ourada and his insurer, the Celina Mutual Casualty Company, grounded on charges of negligence of the drivers of the two cars.   The case of Tomany was settled and is not here involved.   Camozzi sustained personal injuries in the collision and cross-complained against Ourada and his insurer charging causal negligence of Ourada in driving his car.   Ourada's car was injured in the collision and he cross-complained against Camozzi and his insurer charging causal negligence of Camozzi in driving his car.   It appeared that Camozzi's insurance policy was made in Illinois and contained a clause, valid in Illinois, to the effect that no action should be brought upon it until after recovery of judgment against and nonpayment thereof by Camozzi, and the court dismissed the complaint as against Camozzi's insurer.   The remaining issues were submitted to a jury who found as follows: Ourada was causally negligent as to speed and lookout and control, the two latter being embraced in the same question, and not negligent as to not yielding right of way and as to position on the road; Camozzi was causally negligent as to speed, not yielding right of way and position on the road and not negligent as to lookout and control. Ourada's negligence was sixty per cent as compared to Camozzi's forty per cent.   Camozzi's damages were assessed at $2,500 and the injuries to Ourada's car at $175.   Judgment was entered upon the verdict against Ourada and his insurer for sixty per cent of the damages assessed by the jury.

The appellants assign as error, in effect, that the court upon their motions after verdict should have changed the answers of the jury so as to find Ourada not negligent; to find Camozzi negligent as to lookout and control; to find Camozzi's negli-

gence greater or as great as Ourada's; and should have entered judgment on the amended verdict in favor of Ourada for the damages assessed, or dismissing Camozzi's complaint; or if not should have granted a new trial on the ground that the damages assessed to Camozzi are excessive.

As the appellants' claim of error as to negligence is that the findings of the jury in that respect are not supported by the evidence we will briefly state the evidentiary facts which the jury may properly have considered to be controlling.

Camozzi was driving south on a considerably traveled country road. Ourada was traveling east on a road little traveled. They were approaching the intersection of these roads. Their sight was obstructed by bushes adjacent to the northwest corner of the intersection. They were traveling at about the same speed, but Ourada slackened somewhat as he neared the intersection. But for the obstruction of their view the speed of neither driver could be held excessive. But sec. 85.40 (4), Stats. 1937, in force at the time of the collision, provides that on approaching an intersection where the view is obstructed speed shall be reduced to a speed consistent with safety. Under this statute the speed of both drivers was properly held excessive. Camozzi saw the approaching car before Ourada. The only eyewitnesses were the two drivers and Tomany, who was riding with Camozzi, and whose testimony does not contradict their testimony on this point. Camozzi testified that he was twenty feet from the north line of the east-and-west road when he saw the other car, and that he applied his brakes and turned to avoid the impending collision, and his car stopped after the collision close to the ditch on the west, his statutory right side of his road. There was also testimony that skid marks, properly identified as made by Camozzi's car, extended twenty-five feet north of the place of the collision. Both Camozzi and Tomany testified that Ourada came straight ahead. Ourada testified that he saw the other car when he was ten feet from the west line of the north-and-

south road, and that he did not apply his brake but stepped on the accelerator to pass ahead of the other car. Under these circumstances the jury could properly infer that Camozzi saw the approaching car as soon as his view permitted, that his lookout was therefore not negligent, and that he then did all he could to avoid the collision, and therefore was not negligent as to control of his car; and that Ourada, who did not see the car as soon as Camozzi, was negligent as to lookout, and that as Ourada testified that he could stop his car in ten or twelve feet at the speed he was going, he could have avoided the collision by applying his brakes and turning left to pass behind Camozzi, and that ordinary care required him to do so instead of stepping on the accelerator in effort to pass ahead of it. Under these circumstances the jury might properly consider Ourada's negligence greater than Camozzi's. The finding of the jury that Camozzi was negligent in not yielding the right of way was obviously based on sec. 85.18 (1), Stats., which requires a driver to yield the right of way to one approaching an intersection from his right. The finding that Camozzi was offside was apparently due to testimony that the skid marks above referred to were in the center of the road, while sec. 85.15 (1) requires a driver to be on his right-hand half of his road. Under the whole evidence the jury might properly consider that these two statutory violations did not counterbalance the negligence of Ourada over Camozzi in respect to lookout and control, and that the ratio of sixty to forty properly expresses their comparative negligence.

As to Camozzi's damages, while the assessment was perhaps liberal we cannot say that it was above what a jury might properly award. The jury might properly infer that he received a brain concussion as a result of which he at times has severe headaches and is at times subject to dizziness that compels him to sit down while at work to recover mental poise. He received three facial cuts which left him badly scarred. To remove or reduce these scars he went to Chicago for facial treatment.

He was seven or eight weeks away from his business as operator of a service station and hired a man at $25 a week to take his place. He was bandaged or carried adhesive strips on his face for three months. His doctor bill for facial treatment in Chicago was $227. The assessment would seem to be less liberal than the award which we sustained in *Groh v. W. O. Krahn, Inc.*, 223 Wis. 662, 271 N. W. 374, wherein the plaintiff's injuries were similar but somewhat more extensive.

*By the Court.*—The judgment of the circuit court is affirmed.